**HEERDE BLUM LLP**
Matthew C. Heerde
*mheerde@heerdeblum.com*
Joshua G. Blum
*jblum@heerdeblum.com*
48 Wall Street 26th Floor
New York, NY 10005
Tel: (212) 920-5858
*Attorneys for Plaintiffs*

**UNITED STATE DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DIGILYTIC INTERNATIONAL FZE d/b/a SUBLIME GROUP, a United Arab Emirates company, and RISHAN BHAGOWAT, an individual, <br><br> *Plaintiffs,* <br><br> vs. <br><br> ALCHEMY FINANCE, INC. d/b/a ALCHEMY LENDING d/b/a ALCHEMY MARKETPLACE, a Delaware corporation; ALCHEMY COMPANY, LIMITED, a Hong Kong company; ALCHEMY COIN TECHNOLOGY, LIMITED, a Hong Kong company, ALCHEMYZE CAPITAL, LLC, a New York limited liability company, SHENG-WEN CHENG a/k/a JUSTIN JUNG a/k/a JUSTIN CHANG a/k/a JUSTIN CHENG, an individual, JAHRIL TAFARI BELL, an individual, and Does 1 – 20, <br><br> *Defendants.* | **COMPLAINT** <br> 20-cv-4650 <br><br> <u>**Jury Trial Demanded**</u> |

       Plaintiffs Digilytic International FZE d/b/a Sublime Group and Rishan Bhagowat

(collectively, "**Plaintiffs**") allege as follows as and for their complaint against defendants

Alchemy Finance, Inc. d/b/a Alchemy Lending d/b/a Alchemy Marketplace (**"AFI"**), Alchemy

Company, Limited ("**Alchemy Company**"), Alchemy Coin Technology, Limited ("**Alchemy**

Coin"), Alchemyze Capital, LLC ("**Alchemyze**" and collectively with AFI, Alchemy Company, and Alchemy Coin, the "**Alchemy Entity Defendants")**, Sheng-Wen Cheng a/k/a Justin Jung a/k/a Justin Chang ("**Jung**"), Jahril Tafari Bell ("**Bell**") (all collectively, "**Defendants**"):

## PRELIMINARY STATEMENT

1.     This action arises out of Defendants' fraudulent inducement, securities fraud, breach of contract, unjust enrichment, violations of the Racketeer Influenced and Corrupt Organizations Act ("**RICO**"), and other wrongs, perpetrated by Defendants in connection with their purported blockchain-based business, their sale of securities in the form of cryptocurrency tokens, and their theft of Plaintiffs' services.

2.     Around March 2018, plaintiff Rishan Bhagowat ("**Mr. Bhagowat**") was introduced to defendant Jung, who represented to Plaintiffs that Jung and his business, known principally by the name "Alchemy" and headquartered in offices in lower Manhattan in New York City, had built a functional blockchain-based peer-to-peer lending platform that would tokenize collateral debt obligations, and that Alchemy was seeking investors and service providers for the Alchemy business.

3.     Over the following months, principally from Alchemy's New York City offices, Defendant Jung made a series of material fraudulent misrepresentations to Plaintiffs in order to induce Plaintiffs to transfer $250,000 to Defendants purportedly to purchase unregistered securities issued by Defendants in the form of cryptocurrency tokens, and in order to induce Plaintiffs to provide marketing and consulting services to Defendants and the Alchemy business.

4.     Among other fraudulent misrepresentations intended to induce Plaintiffs to invest in Alchemy and provide services to Defendants, Defendants fraudulently represented to Plaintiffs that Defendants had already raised $30 million in investments in the Alchemy cryptocurrency

online lending platform, that Defendants had built a functional cryptocurrency online lending platform, and that Defendants owned cryptocurrency token securities that Defendants would issue to Plaintiffs in exchange for Plaintiff investing in the Alchemy business.

5.      In reliance on Defendants' misrepresentations, Plaintiffs executed a "Token Purchase Agreement" and transferred no less than $250,000 in funds to Defendants on March 26, 2018, believing that such transfer would purchase a corresponding investment in Alchemy represented by cryptocurrency tokens.  Additionally, in reliance on Defendants' misrepresentations, Plaintiffs entered into services contracts with Defendants pursuant to which Plaintiffs provided marketing and consulting services to Defendants in exchange for promised fees.

6.      As is now clear, however, and contrary to Defendants' representations, Defendants had not in fact already raised $30 million in investments in the Alchemy cryptocurrency online lending platform, Defendants had not built any functional cryptocurrency online lending platform, and Defendants did not own cryptocurrency token securities to issue to Plaintiffs.  Defendants instead sold Plaintiffs unregistered securities in the form of cryptocurrency tokens that did not exist.  Defendants had not conducted and did not intend to conduct compliant securities offerings.  Moreover, Defendants never intended to pay Plaintiffs' fees for their services as required by the services contracts.

7.      Alchemy and Defendants never in fact issued Plaintiffs any cryptocurrency tokens or gave Plaintiffs any consideration in exchange for receiving Plaintiff's $250,000, and Defendants accepted Plaintiffs' services but never paid for them, leaving more than $315,000 owed in fees and out of pocket expenses.   Over the course of 2018, Defendants made a series of misrepresentations to Plaintiffs and indeed to the public in order to conceal Defendants' fraud.

And eventually, Defendants ceased all communication with Plaintiffs with no explanation, cheating Plaintiffs out of more than $565,000 in supposed investments, services-related fees and expenses.

8.      Plaintiffs are in the process of preparing complaints for filing with several regulatory agencies, including the Securities Exchange Commission, the Commodities Futures Trading Commission, the Financial Crimes Enforcement Network, and the New York State Department of Financial Services.

## PARTIES

9.      Plaintiff Rishan Bhagowat is a South African national and a resident of the United Arab Emirates.  Mr. Bhagowat is a principal of Plaintiff Digilytic International FZE d/b/a Sublime Group.

10.     Plaintiff Digilytic International FZE d/b/a Sublime Group ("**Sublime Group**") is a United Arab Emirates company and is a citizen of the United Arab Emirates.

11.     On information and belief, Defendant Sheng-Wen Chen a/k/a/ Justin Jung a/k/a Justin Chang a/k/a Justin Cheng is an individual and a South Korean national and at all times relevant is a resident of New York County, New York.  Jung is the founder and at all times relevant the Chief Operating Officer or Chief Executive Officer of the Alchemy Entity Defendants, and Jung is a controlling person of the Alchemy Entity Defendants at all times relevant.  On information and belief Defendant Jung at all times relevant held three different passports under three different names from three different countries, in violation of 18 U.S.C. § 1028, by possessing and using identification of another person with intent to commit unlawful activity that violates federal law.  On information and belief, Defendant Jung, in furtherance of the unlawful schemes described herein, attempted to unlawfully procure and/or did unlawfully

procure naturalization for himself in the United States by entering into a fraudulent marriage, in violation of 18 U.S.C § 1425.

12.     On information and belief, defendant Jahril Tafari Bell is an individual and a citizen of the District of Colombia.  Defendant Bell was the Chief Business Development Officer of the Alchemy Entity Defendants and Bell is a controlling person of all the Alchemy Entity Defendants at all times relevant.

13.     On information and belief, Defendant Alchemy Finance, Inc. is a Delaware corporation with its principal place of business in New York County, New York and is at all times a citizen of the State of New York.

14.     On information and belief, Defendant Alchemy Company, Limited is a Hong Kong company that at all times relevant has its principal place of business in New York County, in the State of New York and at all times relevant is a citizen of the State of New York.

15.     On information and belief, Defendant Alchemy Coin Technology, Limited is a Hong Kong company that at all times relevant has its principal place of business in New York County, in the State of New York and at all times relevant is a citizen of the State of New York.

16.     On information and belief, defendant Alchemyze Capital, LLC is a New York limited liability company with its principal place of business in New York County, in the State of New York and at all times relevant is a citizen of the State of New York.

17.     The true names and capacities of the Defendants named herein as Does 1 through 20 inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiffs who therefor sue such Defendants by unknown names.  On information and belief, the Doe Defendants are individuals or entities over whom this Court has jurisdiction.  Plaintiffs will

amend this Complaint to show the true names, identities and capacities of the Doe Defendants when ascertained.

18.     AFI, Alchemy Company, Limited, Alchemy Coin Technology, Limited and Alchemyze Capital, LLC (the "**Alchemy Entity Defendants**") each were and continue to be a mere sham and organized and operated as the alter ego of the other Alchemy Entity Defendants and the remaining individual Defendants, in that all Defendants have at all relevant times exercised dominion and control over each Alchemy Entity Defendant and each has acted in concert with each other in furtherance of the perpetration of the misrepresentations, frauds and other wrongful acts alleged in this Complaint.  Each of the Alchemy Entity Defendants was a part of Defendants' scheme to shift Defendants assets from defendant to defendant in order to shield Defendants' from liability for their fraud and other misconduct.  Defendants Jung and Bell controlled the Alchemy Entity Defendants for their personal benefit and so intermingled their personal and financial affairs with the Alchemy Entity Defendants such that the same was indistinguishable, and so that all Defendants were and are the alter ego of each other.

19.     At all relevant times, each Defendant was and is the agent of each of the remaining Defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency.  Each Defendant ratified or authorized the wrongful acts of each of the Defendants.

20.     In committing the wrongful acts alleged herein, Defendants have pursued or joined in the pursuit of a common course of conduct and have acted in concert with and conspired with one another in furtherance of the wrongful acts alleged in this Complaint.

21.     Each Defendant aided and abetted and rendered substantial assistance in the wrongful acts alleged in this Complaint.  In taking such actions to substantially assist the

commission of the acts alleged herein, each Defendant acted with knowledge of the primary

wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of

his overall contribution to and furtherance of the wrongful acts alleged herein.

22.     Defendants Alchemy Finance, Inc., Alchemy Company, Limited, Alchemy Coin

Technology, Limited, as well as Defendant Jung have all previously been defendants before this

Court arising out of Alchemy's fraud, in the civil action bearing case number 19-cv-03862

before the Honorable Gregory H. Woods.

## JURISDICTION

23.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1331,  18 U.S.C § 1964, and 15 U.S.C. §§ 77v and 78aa.

24.     This Court has specific personal jurisdiction over each Defendant because each

Defendant has sufficient contacts with the forum district that are directly related to the wrongful

acts alleged in this Complaint.

## VENUE

25.     Venue is proper in this district pursuant to 28 U.S.C § 1391 because a substantial

part of the acts or omissions giving rise to this Complaint occurred in this district.

26.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, because Defendants

are subject to this Court's personal jurisdiction in this district with respect to this action.

## FACTS

### Defendants' Securities Fraud

27.     As soon as Plaintiffs were introduced to Defendants in March 2018, Defendants

began making a series of oral and written misrepresentations to Plaintiffs in order to induce

Plaintiffs to invest $250,000 in Alchemy.

28.     On or around March 13, 2018, via email from Alchemy's New York City offices, Defendants represented to Plaintiffs in a written business summary that Defendants had built a functioning blockchain-based peer-to-peer lending platform.  This summary further represented that "Alchemy is built for Crypto investors who want a valuable investment opportunity … [and for] traditional financial investors looking for products that provide a higher rate of return."

29.     The summary further represented that Alchemy Company, Limited was headquartered in New York, New York.

30.     On or around March 15, 2018, while in Alchemy's New York City offices in lower Manhattan, Jung represented to Mr. Bhagowat via phone that Defendants had by that point already received $30 million in investment in the form of purchase of Alchemy tokens from a United Arab Emirates company called Staxx Solution Capital.

31.     By email sent from Alchemy's New York City offices on or around March 15, 2018, Defendant Jung emailed Mr. Bhagowat what Defendant Jung claimed was a copy of a wire receipt reflecting Staxx Capital's transfer to Alchemy of Staxx Capital's $30 million investment in Alchemy.

32.     On or around March 18, 2018, Defendants distributed to Plaintiffs a "white paper," which described Defendants' and Alchemy's business and cryptocurrency token.  The white paper described Alchemy as "a blockchain-based peer-to-peer lending marketplace."  The white paper compared the Alchemy lending platform to other online lending platforms such as LendingTree and Lending Club.

33.     The white paper stated that Alchemy "is classifying our token sale as a security" and that the token was "a fully registered security token."  The white paper stated that Alchemy's "investment program is speculative," and the white paper provided a percentage breakdown of

the business functions and specific global markets to which Alchemy would allocate invested funds.

34.     In a video of an interview broadcast over the internet via YouTube around March 15, 2018, Defendant Jung and an advisor to Alchemy named David Weild, former vice chairman of NASDAQ, represented that Alchemy had at that time raised significant investments.  Jung and Weild further represented that Alchemy had retained legal counsel in order to conduct fully registered securities offerings through the sale of Alchemy's cryptocurrency token.

35.     On or around March 18, 2018, in phone calls and emails from Alchemy's New York City offices, Jung on behalf of himself and on behalf of the Alchemy Entity Defendants represented to Mr. Bhagowat that Defendants would sell Alchemy cryptocurrency tokens for $250,000.

36.     By email sent from Alchemy's New York City offices on March 19, 2018, Defendant Jung represented to Mr. Bhagowat that Alchemy had a functioning beta version of its software to support its cryptocurrency and operate its artificial intelligence elements of its lending platform.

37.     Unbeknownst to Plaintiffs at the time, on information and belief, all of Jung's above-described representations were false, and Jung knew they were false when he made them.

38.     Unbeknownst to Plaintiffs at the time, on information and belief, the purported wire receipt was a fake, and Mr. Jung knew that it was a fake.

39.     On information and belief, the purported wire receipt did not represent any investment by Staxx Capital at all.

40.     While at Alchemy's New York City offices on March 23, 2018, Jung signed a written Token Purchase Agreement on behalf of Defendants and then emailed that Token Purchase Agreement to Plaintiffs.

41.     The Token Purchase Agreement had been drafted by Defendants and stated that Alchemy Company, Limited was the "record owner of outstanding shares of the token of Alchemy Company, Limited," and "has authority to sell 320,513.00 Alchemy token with 35% discount that worth $250,000."  In this Token Purchase Agreement, Defendants further represented that in exchange for $250,000, Defendants shall "sell, convey, transfer, and deliver to [Plaintiffs] the corporation's Token."

42.     On or around March 23, 2018, while at Alchemy's New York City offices, Jung executed the Token Purchase Agreement on behalf of Defendants, promising to sell and deliver securities in the form of Alchemy tokens to Plaintiffs.

43.     On or around March 23, 2018, from Alchemy's New York City offices, Jung emailed to Plaintiffs the Token Purchase Agreement that he had executed on behalf of Defendants.

44.     On or around March 23, 2018, Plaintiffs executed the Token Purchase Agreement and emailed the Token Purchase Agreement to Jung at Alchemy's New York City offices.

45.     On March 26, 2018, in justifiable reliance on the above-described representations and others and as agreed per the Token Purchase Agreement, Sublime Group transferred $250,000 to Defendants via wire transfer.

46.     However, all of Defendants' above-described representations were false.

47.     When Jung made the above-described representations on behalf of Defendants, Jung knew they were false, and made them with the intent of inducing Plaintiffs to transfer $250,000 to Defendants in exchange for non-existent Alchemy tokens.

48.     At the time Jung made the representation that Defendants would transfer the Alchemy tokens to Plaintiffs, Jung in fact intended never to transfer any tokens to Plaintiffs and intended to never transfer anything at all to Plaintiffs.

49.     The Alchemy tokens that Defendants promised to sell to Plaintiffs were securities, as that term is defined in 15 U.S.C. § 77b.

50.     Plaintiffs invested $250,000 in the Alchemy business, which was a common enterprise, and Plaintiffs did so with an expectation that the increased value of Plaintiffs' investment in Alchemy and the tokens would produce a substantial return on their investment that would be derived solely from the efforts of others – namely, the efforts of Defendants.

51.     On information and belief, Defendants perpetrated additional fraudulent representations in order to induce other persons to transfer money to Alchemy.

52.     Defendants fraudulent representations and wire fraud continued through 2018 and into 2019, in that Defendants made repeated fraudulent representations through internet publications that that they were conducting "token swaps," through which Defendants represented that Defendants increased the Alchemy Entity Defendants' value and liquidity.

53.     Defendants continued their fraudulent conduct into 2019 by making additional representations that they had received investments, when they had in fact received none.

54.     Defendants fundraising activities were unlawful, unregistered and not exempt from registration, and Defendants' activities in respect thereof were fraudulent and deceptive.

55.     Defendants violated Section 5 of the Securities Act of 1933 insofar as Defendants never registered their tokens (which by their own concessions were "securities") with the Securities Exchange Commission, and such securities were not exempt from registration. Defendants never conducted valid private placements in respect of such securities or otherwise employed any crowdfunding or other exemptions from registration. No Form D notice of exempt offering of securities was filed in respect of any Alchemy entities. Defendants lied about engaging counsel and never intended to conduct compliant securities offerings as represented to Plaintiffs and the public.

56.     Defendants made fraudulent misrepresentations and published numerous patently false promotional materials including via the White Paper and other investor materials, their websites, social media forums and televised interviews.

57.     At all times relevant, the Alchemy Entity Defendants' principal place of business was in New York County, New York and Defendants Jung and Bell resided in New York County, New York.

### Defendants' Fraudulent Services Contracts

58.     Around the same time that Defendants defrauded Plaintiffs out of $250,000 through a fake cryptocurrency sale, Defendants also fraudulently induced Plaintiffs to enter into two services agreements.

59.     Using the misrepresentations described above, Defendants induced Plaintiffs to enter into two services agreements.

60.     Jung, on behalf of Defendants, and Plaintiffs executed a Master Services Agreement ("**MSA**") dated March 24, 2018, which provided that Sublime Group would provide

marketing services to Defendants in exchange for Defendants paying Sublime Group a fee of $32,000 per month, plus reimbursement of expenses.

61.     Jung, on behalf of Defendants, and Plaintiffs executed an Advisory Agreement ("**Advisory Agreement**") around March 24, 2018, which provided that Mr. Bhagowat would provide consulting services to Defendants in exchange for Defendants paying Mr. Bhagowat a 0.5% of all funds raised by Defendants.

62.     Pursuant to the two services agreements, Jung represented on behalf of Defendants that Defendants would pay Plaintiffs their fees and out of pocket expenses as described in the two services agreements.

63.     On information and belief, at the time that Jung executed the two services agreements on behalf of Defendants, Defendants never intended to perform their obligations under either of the two agreements.  In fact, at the time Jung executed the two services agreements, Jung and Defendants secretly harbored an intent to not perform Defendants' obligations and harbored an intent not to pay Plaintiffs' fees and expenses.

64.     In reliance on Jung's and Defendants' false representation and the additional false representations described in this complaint, Plaintiffs entered into the MSA and the Advisory Agreement.

65.     In reliance on that false representation and the false representations described above, Plaintiffs provided services and extended advances on expenses with a value of no less than $315,000.

66.     Plaintiffs performed all of their obligations under the two agreements, providing marketing, consulting and advisory services.

67.     Pursuant to the MSA, and at Defendants' specific request, Plaintiffs organized a promotional dinner event at the April 2018 Coachella Festival in southern California, at which Plaintiffs promoted and marketed Alchemy's business.  At Defendants' specific request, Plaintiffs advanced Defendants $21,000 to secure Alchemy's place at the event as an approved expense under the MSA.

68.     Indeed, on or around April 5, 2018, Mr. Bhagowat met with defendant Jung in person in New York City, during which meeting Jung apologized for not having yet paid Plaintiff's first invoice for services under the MSA, and Jung represented payment would be made shortly, particularly in light of Plaintiffs' imminent marketing services at the Coachella Festival.

69.     Plaintiffs sent invoices for their services and expenses, totaling no less than $85,000.

70.     Despite Plaintiffs' performance of all their obligations under the two agreements, Defendants never paid Plaintiffs any of the fees owed or reimbursed the expenses incurred.

71.     Around April 2018, Defendants published online reports that they were conducting "token swaps," through which Defendants represented that Defendants increased the Alchemy Entity Defendants' value and liquidity.  Unbeknownst to Plaintiffs, such reports were false, and Defendants knew they were false when they made them.

72.     On or around June 19, 2018, through defendant Bell, Defendants represented to Plaintiffs that the $30 million investment had been frozen by another Alchemy principal, and that this was the reason that Alchemy had not yet paid Sublime Group's invoices under the MSA.

73.     Mr. Bell's representation was knowingly false and intended to induce Plaintiffs to continue providing services to Defendants.

74.     On or around June 19, 2018 by email to Mr. Bhagowat, Defendant Bell represented that Justin Jung was no longer associated with Alchemy, and that Alchemy had secured an additional $1 million investment.

75.     On information and belief, Defendant Bell's representations in that June 19, 2018 email were false, and Defendant Bell knew they were false.

76.     In reliance on Mr. Bell's representations and Defendants representations of increased liquidity, the continued availability of the $30 million investment and additional investment, Plaintiffs continued to provide services to Defendants.

**Defendants Disappear With Plaintiffs' $250,000 Investment and Without Paying Plaintiffs' Fees or Expenses**

77.     Subsequently, despite Defendants maintained several websites for Alchemy through 2018 and 2019, and continued making public announcements that Alchemy was developing its platform, selling Alchemy tokens and raising significant funds, Defendants ceased responding to Plaintiffs' communications.  Defendants never paid any money to Plaintiffs, despite repeated demand for payment.

78.     On information and belief, Jung and Bell took Plaintiffs' $250,000 investment for themselves, and used it for their personal benefit.

**FIRST CAUSE OF ACTION**
**Fraudulent Inducement**
**(Against all Defendants)**

79.     Plaintiffs re-allege all of the above allegations as if fully set forth herein.

80.     As described above, Defendants made false representations of material fact regarding, at least, the status of the purported Alchemy cryptocurrency-supported lending platform, regarding a $30 million investment that Alchemy had purportedly received, regarding

Alchemy's ownership and authority and intent to sell tokens, regarding intent to pay for

Plaintiffs' services, and regarding token swaps and increased liquidity.

81.    Defendants knew these representations were false when made, and Defendants

intended that Plaintiffs rely on these statements in transferring $250,000 to Defendants on March

26, 2018 pursuant to the Token Purchase Agreement, and in entering into and performing

services under MSA and the Advisory Agreement.

82.    Plaintiffs justifiably relied on Defendants false representations in entering into the

Token Purchase Agreement and transferring $250,000 to Defendants on March 26, 2018, and in

entering into and performing services under MSA and the Advisory Agreement.

83.    All Defendants and each of them agreed among each other to carry out the acts

necessary to fraudulently induce Plaintiffs to transfer $250,000 to Defendants and to fraudulently

induce Plaintiffs to enter into and perform services under the MSA and the Advisory Agreement.

84.    Plaintiffs have been damaged as a result of Defendants fraud and conspiracy to

commit fraud in an amount no less than $565,000.

**SECOND CAUSE OF ACTION**
**Breach of Contract**
**(Against All Defendants)**

85.    Plaintiffs re-allege all of the above allegations as if fully set forth herein.

86.    Plaintiffs performed all of their obligations under the Token Purchase Agreement,

the MSA, and the Advisory Agreement.

87.    Despite Plaintiffs' full performance under the Token Purchase Agreement,

Defendants failed and refused to sell tokens to Plaintiffs, in breach of the Token Purchase

Agreement.

88.     The Advisory Agreement provided that Defendants would pay Mr. Bhagowat 0.5% of all funds raised by Defendants (excluding funds provided by Plaintiffs).

89.     Around September 2018, Defendants represented in that they raised $46.2 million from sale of their cryptocurrency token.

90.     Despite Defendants' raised funds far in excess of Plaintiffs' $250,000 from the sale of Defendants' cryptocurrency token, and despite Mr. Bhagowat's performance of all his obligations under the Advisory Agreement, Defendants never paid Mr. Bhagowat his 0.5% fee, which fees total no less than $230,000.

91.     Despite Plaintiffs' full performance under the MSA, Defendants failed and refused to pay Plaintiffs fees and expenses owed for Plaintiffs' services under the MSA , which fees and expenses exceed $85,000.

92.     Defendants have breached Token Purchase Agreement, the MSA and the Advisory Agreement.

93.     As a result of Defendants' breaches of the MSA and the Advisory Agreement, Plaintiff has been damaged in an amount no less than $565,000.

### THIRD CAUSE OF ACTION
**Unjust Enrichment**
**(Against All Defendants)**

94.     Plaintiffs re-allege all of the above allegations as if fully set forth herein.

95.     Plaintiffs conferred benefits on Defendants by transferring $250,000 to them on March 26, 2018 and by providing services under the MSA and the Advisory Agreement.

96.     Defendants knowingly accepted these benefits.

97.     Defendants retained such benefits and continue to enjoy those benefits to this day.

98.     It is against equity and good conscience that Defendants retain such benefits, and the same should be disgorged and returned to Plaintiffs.

99.     Defendants are thus liable to Plaintiffs in an amount no less than $565,000.

### FOURTH CAUSE OF ACTION
**Account Stated**
**(Against All Defendants)**

100.    Plaintiffs re-allege all of the above allegations as if fully set forth herein.

101.    Defendants received Plaintiffs' invoices and did not dispute them.

102.    There is thus an account stated as between Plaintiffs and Defendants, pursuant to which Defendants owe Plaintiffs no less than $85,000.

### FIFTH CAUSE OF ACTION
**Violation of Section 10b of the Securities Exchange Act and Rule 10b-5**
**(Against All Defendants)**

103.    Plaintiffs re-allege all of the above allegations as if fully set forth herein.

104.    By virtue of the foregoing, Defendants, directly or indirectly, by the use of the means and instrumentalities of interstate commerce or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly employed devises, schemes or artifices to defraud, made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and engaged in acts, practices and courses of business which operate as fraud or deceit.

105.    By virtue of the foregoing, Defendants violated Section 10b of the Securities Exchange Act (15 U.S.C § 78j) and Rule 10b-5(a)-(c) (17 C.F.R. § 240.10b-5).

106.    Defendants conduct proximately caused damages to Plaintiffs in connection with their purported $250,000 purchase of Defendants' cryptocurrency token securities.

107.    Defendants are liable to Plaintiffs for compensatory damages or rescission.

<u>**SIXTH CAUSE OF ACTION**</u>
**Violation of Securities Act Section 12**
**(Against All Defendants)**

108.    Plaintiffs re-allege all of the above allegations as if fully set forth herein.

109.    Section 12(a) of the Securities Act (15 U.S.C. § 77l[a]) grants Plaintiffs a private

right of action against any person who offers or sells securities in violation of Section 5 (15

U.S.C. § 77[e]), and states that such person:

> shall be liable … to the person purchasing such security from him,
> who may sue either at law or in equity in any court of competent
> jurisdiction, to recover the consideration paid for such security with
> interest thereon, less the amount of any income received thereon,
> upon the tender of such security, or for damages if he no longer owns
> the security.

110.    Defendants, by engaging in the conduct described herein, (a) sold securities in

violation of Section 5 of the Securities Act, and (b) directly or indirectly made use of means or

instruments of transportation or communication in interstate commerce or of the mails to offer to

sell or to actually sell securities, or to carry or cause such securities to be carried through the

mails or in interstate commerce for the purpose of sale or for delivery after sale.

111.    Defendants are "sellers" within the meaning of the Securities Act because they or

their agents solicited Plaintiffs' investments in the Alchemy business.

112.    As a direct and proximate result of Defendants unregistered sale of securities,

Plaintiffs have suffered damages in connection with their purported $250,000 purchase of

Defendants' cryptocurrency token securities, and Defendants are liable to Plaintiffs for rescission

and/or compensatory damages.

**SEVENTH CAUSE OF ACTION**
**Violation of Securities Act Section 17(a)**
**(Against All Defendants)**

113.    Plaintiffs re-allege all of the above allegations as if fully set forth herein.

114.    By virtue of the foregoing, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, Defendants: (a) employed devices schemes or artifices to defraud; (b) obtained money or property by means of an untrue statement of a material fact or omitted to state a material fact necessary in order to make such statements not misleading in light of the circumstances under which they were made; and/or (c) engaged in transactions, practices or courses of business which operate or would operate as fraud or deceit upon the purchaser.

115.    By virtue of the foregoing, Defendants violated Securities Act Section 17(a)(1)-(3) (15 U.S.C. § 77q[a][1]-[3]).

116.    As a direct and proximate result, Plaintiffs have suffered damages in connection with their purported $250,000 purchase of Defendants' cryptocurrency token securities, and Defendants are liable to Plaintiffs for rescission and/or compensatory damages.

**EIGHTH CAUSE OF ACTION**
**Aiding and Abetting Violation of Section 17(a) of the Securities Act and Section 10b of the Exchange Act and Rule 10b5 Thereunder**
**(Against Individual Defendants)**

117.    Plaintiffs re-allege all of the above allegations as if fully set forth herein.

118.    By virtue of the foregoing, Jung provided knowing or reckless substantial assistance to the Alchemy Entity Defendants, which, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of a security, with scienter, used the means or instrumentalities of interstate commerce, or of the mails, to make untrue statements of

material fact and omitted to state material facts necessary in order to make such statements not

misleading in light of the circumstances under which they were made.

119.    By virtue of the foregoing, Jung aided and abetted violations of Sections 17(a)(1)

– (3) of the Securities Act (15 U.S.C. § 77q[a][1]-[3]), Section 10b of the Securities Exchange

Act (15 U.S.C. § 78j(b)), and Rule 10b-5(a) – (c), promulgated under the Securities Exchange

Act (17 C.F.R 240.10b-5[a]-[c]), in violation of Section 20(e) of the Securities Exchange Act (15

U.S.C. § 78t[e]).

## NINTH CAUSE OF ACTION
### Civil Aiding and Abetting Fraud
### (Against All Defendants)

120.    Plaintiffs re-allege all of the above allegations as if fully set forth herein.

121.    The Alchemy Entity Defendants committed overt acts of fraud and other unlawful

conduct as described above.

122.    Individual Defendants had knowledge of such fraud and other unlawful conduct.

123.    Individual Defendants substantially assisted the perpetration of such fraud and

other unlawful conduct.

124.    As a result of Individual Defendants' aiding and abetting, Plaintiffs have been

damaged in an amount no less than $565,000.

## TENTH CAUSE OF ACTION
### Violation of RICO Section 1962(c)
### (Against All Defendants)

125.    Plaintiffs re-allege all of the above allegations as if fully set forth herein.

126.    Alchemy is an enterprise engaged in and whose activities affect interstate

commerce.

127.   Defendants managed and operated the Alchemy enterprise through a pattern of racketeering activity, and thereby damaged Plaintiffs.  Specifically, Defendants repeatedly engaged in wire fraud in violation of 18 U.S.C. § 1343 and engaged in fraud in the sale of securities in order to obtain Plaintiffs' March 26, 2018 $250,000 wire transfer and to obtain Plaintiffs' services, by transmitting numerous fraudulent writings and documents, and plaintiffs committed additional criminal predicate acts, in violation of 18 U.S.C. § 1028, by possessing and using identification of another person with intent to commit unlawful activity that violates federal law and by entering into a fraudulent marriage, and in violation of 18 U.S.C § 1425, for the purpose of executing their fraudulent and criminal scheme.

128.   Defendants' pattern of racketeering activities included Defendants' fraud in the sale of securities.

129.   Defendants' pattern of racketeering activities included Defendant Jung's violation of 18 U.S.C. 1028 in holding multiple passports under multiple names from multiple countries.

130.   Defendants' pattern of racketeering activities included Defendant Jung's violation of 18 U.S.C § 1425 in attempting to unlawfully procure and/or did unlawfully procure naturalization for himself in the United States by entering into a fraudulent marriage.

131.   Defendants employed such criminal conduct as their regular way of doing business.

132.   Defendants transferred Plaintiffs' fraudulently obtained funds, and other fraudulently obtained funds, amongst themselves in order to conceal the funds from creditors and to conceal the nature of their scheme.

133.   As direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in an amount of at least $565,000.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray the Court enter judgment as follows:

A. On the First Cause of Action for Fraudulent Inducement, awarding damages in favor of Plaintiffs in an amount no less than $565,000, plus interest, attorneys' fees and costs;

B. On the Second Cause of Action for Breach of Contract, awarding damages in favor of Sublime Group in an amount no less than $565,000, plus interest, attorneys' fees and costs;

C. On the Third Cause of Action for Unjust Enrichment, awarding damages in favor of Plaintiffs in an amount no less than $565,000, plus interest, attorneys' fees and costs;

D. On the Fourth Cause of Action for Account Stated, awarding damages in favor of Sublime Group in an amount no less than $85,000, plus interest, attorneys' fees and costs;

E. On the Fifth Cause of Action for violation of Securities Exchange Act § 10b and Rule 10b-5, awarding damages in favor of Sublime Group in an amount no less than $250,000, plus interest, attorneys' fees and costs;

F. On the Sixth Cause of Action for violation of Securities Act § 12, awarding damages in favor of Sublime Group in an amount no less than $250,000, plus interest, attorneys' fees and costs;

G. On the Seventh Cause of Action for violation of Securities Act § 17(a), awarding damages in favor of Sublime Group in an amount no less than $250,000, plus interest, attorneys' fees and costs;

H.  On the Eighth Cause of Action for aiding and abetting violations of Securities Act section § 17(a), Securities Exchange Act § 10b and Rule 10b-5, awarding damages in favor of Plaintiffs in an amount no less than $250,000, plus interest, attorneys' fees and costs;

I.  On the Ninth Cause of Action for civil aiding and abetting fraud, awarding damages in favor of Plaintiffs in an amount no less than $565,000, plus treble damages, interest, attorneys' fees and costs;

J.  On the Tenth Cause of Action for violation of RICO § 1962(c), awarding damages in favor of Plaintiffs in an amount no less than $565,000, plus treble damages, interest, attorneys' fees and costs;

K.  Granting such other and further relief as the Court deems just and proper.

<u>Plaintiffs Demand a Jury Trial</u>

Dated:  New York, New York
         June 17, 2020

                                        HEERDE BLUM LLP

                                        By: Matthew C. Heerde
                                            48 Wall Street 26th Floor
                                            New York, NY 10038
                                            Tel: 212-920-5858
                                            Fax: 347-535-3588
                                            Email: mheerde@heerdeblum.com
                                            *Attorneys for Plaintiffs*